## YOUNG et al. v. GRISHAM.

### No. 2270.

Court of Civil Appeals of Texas. Eastland.

May 29, 1942.

Rehearing Denied June 26, 1942.

L. R. Pearson, of Ranger, and Dabney & Dabney, of Eastland, for appellants.

Grisham & Grisham, of Eastland, for appellee.

FUNDERBURK, Justice.

The parties to this suit as originally brought, in 1934, were Tom Young, James R. Young, and Mrs. Pearl Young, the divorced wife of James R. Young, plaintiffs, and W. S. Adamson, administrator of the estate of Joe Young, deceased, defendant. Such suit as to all parties was dismissed as shown by recitation in the judgment from which this appeal is prosecuted.

Prior to such dismissal, R. N. Grisham intervened in the suit asserting a cause of action against Tom Young, James R. Young, Mary Coffman (joined pro forma by her husband Walter Coffman), and Grace Hamilton (joined pro forma by her husband George Hamilton). The parties to this latter action may be referred to by name, or as intervener and defendants, as between whom the case proceeded to trial and judgment.

Intervener claimed that of certain lands once constituting the community estate of Joe Young and his wife, Marilda Young, he was, by reason of a contract dated February 21, 1934 by and between James R. Young, Tom Young and Mrs. Marilda Young on the one hand, and intervener, R. N. Grisham, on the other, entitled to "1/3 interest in the 1/2 interest formerly belonging to the said Marilda Young, now deceased, and likewise to a 1/3 interest in the said land so taken by the said James R. or Jim Young, and Tom Young, or a 1/3 interest in their total 1/2 interest of their father's portion of said estate."

In a jury trial the court, after the parties had rested, overruled a motion for an instructed verdict for the defendants, and sustained a motion for an instructed verdict for intervener. From the judgment, which also awarded partition of the land, the defendants have appealed.

The contract in naming the parties of the first part included Mrs. Mary Coffman, joined pro forma by her husband, Walter Coffman, and Grace Hamilton, joined pro forma by her husband George Hamilton, who did not sign the contract. After describing four tracts of land, the contract contained recitations as follows:

"Parties of the first part recognize that the estate of Joe Young, deceased, is indebted, but the extent of the indebtedness has not been fully determined. Certain creditors in the probate court are contending that all the right, title and interest in said land, and each tract thereof, is vested in said estate of Joe Young, deceased, and all of said land is now advertised for sale by the administrator of said estate as property belonging in its entirety to the said estate. Parties of the first part desire to have the said sale postponed, and, if possible, defeated.

"Parties of the first part represent that Tom Young owns an undivided one-third of all the real estate above described, except the last tract; and that Jim Young owns an undivided one-third of all of said land, except the last tract. The other one-third interest was owned by Joe Young at the time of his death, and *is now vested in his estate,* subject to the homestead rights and designations that might be made for and on account of his surviving wife, Mrs. Marilda Young, one of the parties to this contract. The homestead designation has never been fully made, and there is a question whether it may be enforced or whether the said Marilda Young will be remitted to her remedy for allowance in lieu of homestead, under the statutes and laws of the State of Texas.

"Parties of the first part employ party of the second part *to protect their rights as aforesaid* in and to said lands, and agree that the said party of the second part shall have and receive, in consideration for his said services, an undivided one-third interest in all said lands or undivided interests in said lands *as may be finally vested in the parties of the first part, or any of them, by compromise or by lawsuit or lawsuits,* said interest so assigned being an undivided interest in all the lands or interests therein *to which title may be quieted* in any of the parties of the first part.

"Party of the second part agrees to take such steps immediately as in his best judgment may be available to protect the parties of the first part *in a legal manner,* and if necessary to institute a suit or suits or to contest any suit or action now pending, and to do and perform all things legally necessary which may be done lawfully to accomplish the *removal of clouds,* and the *quieting in one or more of the parties* of the first part, of the title and possession of the premises in question or a part thereof or interest therein.

"Parties of the first part hereby assign, convey and deliver to the party of the second part, for and in consideration of said services, the full one-third undivided interest in and to the above described lands, *limited to such portions thereof as may be recovered and vested by suit or otherwise in one or more of the parties of the first part.*" (Italics ours.)

As showing performance of intervener's obligations imposed upon him by said contract, he alleged that he brought the suit described in the beginning of the above statement of the case, and which was dismissed as aforesaid. Briefly stated, it appears that by such suit Tom Young and James R. Young sought to establish their ownership each of an undivided 1/3 interest in all the lands (except one tract) accruing to them by virtue of a parol contract with their father followed by possession and improvements upon such land. As showing the effect of filing such suit intervener's petition alleges the following: "* *. * and the threatened sale was never made and Marilda Young came into possession of the title to 1/2 of all of the said lands and premises and the said Tom Young and James R. Young, or Jim Young, came into possession ultimately of a 1/4 interest each, of the 1/2 interest formerly owned by their father, then deceased, and the two sisters, one named Mrs. Mary Coffman and whose husband is Walter Coffman, and Grace Hamilton, whose husband is George Hamilton, came into the possession of 1/4 interest each of the portion of the estate inherited from their said father; that James R. Young, or Jim Young, Tom Young, Mrs. Mary Coffman and Grace Hamilton were the heirs and only heirs of their deceased father, Joe Young, and the said heirs, pending this suit, by common agreement divided their father's 1/2

interest in these lands and other lands, share and share alike, but in making the said partition and division, the said defendants ignored the rights of your intervener in the lands and premises herein described."

All parties seem to be in agreement to the effect that the contract is unambiguous. Defendants, in effect, contend that under the provisions of the contract, and the conclusively established facts, they were entitled to a peremptory instruction in their favor. Intervener, on the other hand, seeks to sustain the judgment based upon a peremptory instruction in his favor.

We concur in the view that, at least as respects any question in issue, the contract is unambiguous. The evidence was conclusive to the effect that the contract was made after the death of Joe Young. The defendants were the heirs of Joe Young, deceased. The lands in suit constituted community property of Joe Young and his wife Marilda Young, who survived her said husband. Therefore, Mrs. Marilda Young had legal title to an undivided one half of the land and Tom Young, James R. Young, Mrs. Mary Coffman and Mrs. Grace Hamilton had legal title each to a 1/4 of 1/2 (the father's 1/2) of the land. Their title to the land had already vested in them at the time the contract was made. True, their ownership was subject to the payment of debts, but that did not affect the fact that title to the land in the proportions stated had vested in them at the death of Joe Young.

■ Intervener sought judgment for nothing except as provided by the contract. As provided by the contract he was to have nothing except upon a contingency. Only upon the contingency that he "recovered and [had] vested by suit or otherwise in one or more of the parties of the first part" some part or interest in the land described in the contract was he to have 1/3 undivided interest in such portion. Under the undisputed evidence, although he filed a suit to establish title to 1/3 of the land in Tom Young and another 1/3 in James R. Young, he recovered no part of the land, nor procured the vesting of title thereto to no part of the land in either of them or anyone else. The fact that as the result of bringing the suit the advertised sale of the land by the administrator was postponed or abandoned, to the ultimate advantage of the other parties to the contract, did not operate to change the contract provision by which intervener was to have an interest in the land only upon the contingency that he recovered land or had title to land vested in the defendants.

It seems to be the position of intervener that his obligation under the contract was to postpone or prevent a sale of the land to satisfy debts of the estate. It is true the contract itself shows that the other parties to the contract desired that that be done. That, however, was not intervener's undertaking under the contract, and if it was there would, we think, be serious doubt as to the legality of such a contract. A purpose of defeating creditors of the estate in the collection of the debts due them, is not to be read into the contract by implication. Intervener's obligation under the contract was to recover a 2/3 interest, or some part thereof, in the land for Tom Young and James R. Young as against their mother and their father's estate. It was contemplated that the assertion of such claim would have the effect to postpone or defeat the proposed sale of all the land to pay the debts of the estate. Such effect would, however, be only incidental. If such effort was the purpose of the contract, that would imply that the assertion of the claims of Tom and Jim Young were not made in good faith, but only as a means of defeating creditors in the collection of their debts.

■ The signing of the contract by Mrs. Marilda Young could have had no other effect than to evidence her consent to the assertion against her and the creditors and heirs of her deceased husband, of the claims of her sons, Tom Young and James R. Young. If the parties intended that under any contingency intervener was to have any interest in lands belonging to Mrs. Marilda Young, such intention was not expressed by the contract because certainly by the terms of the contract intervener did not obligate himself to recover any land or interest for Mrs. Marilda Young and it is equally certain that he did not do so. In any and all events, the intervener was, under the terms of the contract, to have no interest in the land, except upon the contingency that he recovered land and had title to land vested in some of the parties to the contract, and the evidence is conclusive that he did not do so. It is, therefore, our conclusion that the court erred in giving a peremptory instruction for intervener, and further erred in not giving the requested peremptory instruction for the defendants; that the judgment should be reversed and judgment rendered to the effect that intervener take nothing by the suit. It is accordingly so ordered.